The next case this morning is 522-0494, People v. Flays Peoples. Arguing for the defendant appellant is Christina O'Connor. Arguing for the state appellee is Adam Rodriguez. Each side will have 10 minutes for their argument. The appellant will also have five minutes for rebuttal. Please note only the clerk is permitted to record these proceedings. Good morning. Ms. O'Connor, you're first on behalf of the defendant in this case. You may proceed when you're ready. Thank you, Your Honor. May it please the court, counsel, my name is Christina O'Connor. I'm an assistant appellate defender at the Office of the State Appellate Defender, and I represent Mr. Flays Peoples in this matter. There are three issues in this case. However, I'm going to focus the majority of my time on issues one and three, which deal with Mr. Peoples' plea being involuntary and post-plea counsel's failure to comply with Rule 604D. If I have time, I will address the argument that this case must also be remanded for a preliminary Kringle inquiry. This case raises an important issue that has not yet been decided by Illinois courts, which is whether an improper denial to proceed pro se may result in an involuntary guilty In this case, under these facts, Mr. Peoples' plea was involuntary because he was improperly denied the right to represent himself. Shortly before he entered the plea, he wrote a letter to the judge stating that he did not want to accept the state's plea offer. And during the plea hearing, when the court asked Mr. Peoples how he wanted to plead, Mr. Peoples responded, I have no choice, right? Plead guilty, right? And Mr. Peoples stated that he was not satisfied with his attorney, the one he was forced to have represent him. Interestingly, Mr. Peoples had been previously allowed to proceed pro se after receiving the proper admonishments from the trial court. Later, Mr. Peoples asked for plea counsel to be reappointed. And when the issues he previously had with plea counsel persisted, Mr. Peoples once again asked to proceed pro se. The trial court readmonished Mr. Peoples, but this time the court stated that it would not allow the public defender to withdraw because the charges were a class X. During the plea hearing, the court reiterated that the denial was because of the seriousness of the offenses, not because Mr. Peoples was trying to delay the proceedings or because he could not appreciate the rights he would be waiving by representing himself. Therefore, the record shows that Mr. Peoples was improperly denied his right to represent himself and instead was forced to proceed with an attorney that he did not want. The right to represent oneself is a correlative right to the assistance of having competent counsel. If a guilty plea may be involuntary, if the defendant receives ineffective assistance of counsel, logic follows that a plea may also be involuntary if a defendant feels like he has no choice but to take a plea he does not want or face trial with an attorney that he does not want, who will have the ultimate control over his case. And that is what occurred here. Additionally, there is no indication that Mr. Peoples was attempting to delay the proceedings by asking to once again represent himself, and his request was unequivocal. During the admonishments, during the guilty plea hearing, the trial court informed Mr. Peoples that he could have an attorney appointed to represent him, hire his own attorney, or represent himself. While Mr. Peoples only asked about hiring his own attorney, he had just been denied the ability to represent himself about a year ago, and even if he had asked to represent himself again, the court stated on its own that it had denied him the ability to represent himself because of the seriousness of these offenses. So any further request by Mr. Peoples in this case would have just been futile. Mr. Peoples was not required to repeatedly ask to represent himself, and when he was just told that he would be not allowed to, and this does not mean that he abandoned his request. Of course, all of this in addition to the fact that Mr. Peoples' plea was also involuntary based on his allegations of the trial court's threats to sentence him the maximum sentence if he did not accept the plea deal. After the court asked Mr. Peoples if anyone had forced or threatened him with anything to plead guilty, the court went off the record and then went back on the record and re-asked the question. Up until that point, Mr. Peoples was quite talkative and provided explanations for all of his answers the court asked him. However, when the court went back on the record, Mr. Peoples' answers became very short. The court's actions of going off the record means Mr. Peoples must pray that this court will accept his uncontested statements of what occurred off the record. However, this court can find some support in the record for Mr. Peoples' allegations where there was evidence presented that the judge could be particularly onerous towards domestic violence offenders and where the court had told Mr. Peoples previously that he would be looking to closer to the maximum sentence based on the evidence they were likely to hear at trial, even though the court had not been privy to any plea negotiations. Under these facts, it is hard to imagine that Mr. Peoples' plea can be considered voluntary and he should be allowed to withdraw from his plea in this case. Moving on to the issue about 604D, Post Plea Counsel, who is a different attorney than Plea Counsel, failed to comply with Rule 604D in this case. Post Plea Counsel let Mr. Peoples' case sit unattended for almost a year and a half, continued to delay the case by asking for more time to take the steps he needed to, and actually asked the court and filled out the request that he would have 35 days to file any amended pleadings, and then still failed to file an amended motion or clarify which motion he was proceeding on. It is well settled law that a defendant has no authority to file pro se motions when he is represented by counsel, unless the motion would trigger a crankle inquiry, which was also not done properly in this case. Thus, Plea Counsel's motion was the valid pending motion that the hearing was conducted on, which only raised the issues that Mr. Peoples was improperly admonished as the consequences of his plea, and that he didn't understand the consequences of his plea. In fact, after the motion hearing, the trial court issued its order and referenced Plea Counsel's motion, not Mr. Peoples' pro se motion, as the one that the hearing was conducted on. Would that have been the appropriate motion to reference? I'm sorry, Your Honor, are you referencing Mr. Peoples' pro se motion or counsel's? Counsel's motion. Yes, because that was the one that was probably before the court as Mr. Peoples' pro se motion came after. So the issue here is that Post Plea Counsel had a duty to amend the motion to clarify what he was proceeding on, particularly in the fact that there was a lot of testimony that referenced Mr. Peoples' pro se motion here. And, I mean, Post Plea Counsel did ask for more time and had was being raised at the motion hearing. More importantly, however, at the end of the motion hearing, the court asked how the parties would like to proceed with argument and Post Plea Counsel stated that he would appreciate the opportunity to file some sort of brief. In his written argument, Post Plea Counsel raised an entirely new claim that Mr. Peoples' health issues would have been more adequately presented through a 402D conference. However, this argument was never made in either of the arguments made about this or testimony at the hearing and Post Plea Counsel failed to attach any support or documentation to support this new claim or explain why a 402D conference would allow Mr. Peoples to withdraw from his plea because one didn't happen. So where Post Plea Counsel raised an entirely new issue during his written argument for why the court should allow Mr. Peoples to withdraw from his guilty plea, there is a lack of compliance with Rule 604D. There is no indication that Post Plea Counsel believed any of the claims raised lacked merit. However, Post Plea Counsel made arguments on some of the claims and effectively abandoned any ineffective assistance of counsel claims that had been raised in Mr. Peoples' pro se motion. And that brings us to the third issue that this case must be remanded for a proper initial Krenkel inquiry. The purpose of a Krenkel inquiry is to flush out all post trial claims of ineffective assistance of counsel. Mr. Peoples made several allegations of ineffective assistance of counsel and the trial court disappointed him new counsel. There's no indication that Post Plea Counsel fulfilled his obligations as Krenkel counsel or even knew that that was his role here. As the Reed court explained, Krenkel counsel must independently evaluate a defendant's pro se ineffective assistance of counsel claims. And if no meritorious claims are found, Krenkel counsel should withdraw. So, and this court has previously adopted Reed and its unpublished decisions in Johnson and Frakes. And there's no reason for this court to deviate from its holdings in this case. And furthermore, the Kyle's court explained the best practice for this situation. Because Post Plea Counsel was arguably appointed as Krenkel counsel and to deal with the pending motions, he cannot merely just withdraw if he found that there's issues of ineffective assistance of counsel that lacked merit. That's why the best way to proceed under these circumstances would be for the court to conduct an initial Krenkel inquiry, appoint conflict free counsel if needed, only to deal with the ineffective assistance of counsel issues. And that way we can flush out the claims. And if counsel believes that those claims don't have merit, he can just withdraw. And there won't be a situation as in this case, where it's trying to figure out what counsel believed had merit, especially when he basically abandoned the ineffective assistance of counsel claims here. Lastly, as much as Mr. Peoples would like to adopt the state's position that anytime a defendant makes an ineffective assistance of counsel allegation, he should just be appointed new counsel because of the conflict of interest. That is contrary to what our Supreme Court requires. And that is why this case should be decided. For the foregoing reasons, Mr. Peoples asked this court to allow him to withdraw from his plea and have the opportunity to plead anew. Alternatively, we asked this court to reverse and remand for a proper Krenkel inquiry and for the denial of Mr. Peoples' motion to withdraw his guilty plea be vacated and allow Mr. Peoples to have new counsel who will comply with Rule 604D. So are you asking this court to vacate? Tell me what you're asking for in relief one more time. Yes, Your Honor. So in terms of the first issue with the voluntariness of the plea, we are just asking this court to allow him to withdraw from his plea. Also, because the Krenkel inquiry was not followed properly with the Krenkel procedures, with Krenkel counsel, we're asking for this to be reversed and remanded for a proper inquiry as the Reed court had decided. And then we are also asking that the denial of Mr. Peoples' motion to withdraw guilty plea be vacated and he will be appointed new counsel who will comply with Rule 604D. Well, if it's reversed and remanded for a proper Krenkel hearing, why would we vacate the plea unless we give the circuit court the opportunity to have the Krenkel hearing? I mean, if the Krenkel hearing would go your client's way, there would be no reason for us to take that second step, would there? No, Your Honor, that's correct. And that's why if this court does not want to just allow him to withdraw from his plea because there are these issues remaining and just remand for a Krenkel inquiry, we believe that is an appropriate remedy for relief here as well. So that's why we asked for alternatively. Okay. So if the court reversed and remanded for proper Krenkel inquiry, would you also be asking for new counsel? Yes, Your Honor. I believe first it would be the initial Krenkel inquiry so Mr. Peoples could flush out the claims and then for the court to decide whether counsel needs to be appointed or not based on that. So it really will depend on how the Krenkel inquiry goes. So briefly, it would be reverse and remand for a proper Krenkel inquiry because depending on how that goes, you either may need new counsel or you may vacate the plea. Yes, Your Honor. And then if say the court decides there needs to be new counsel appointed, that attorney can flush out all the ineffective assistance of counsel claims and deal with that issue. And then there still would be the issue about Rule 604D compliance as well. But that would be something that court could deal with once Krenkel is properly decided and dealt with. Okay. Well, can this court make a finding as to the Rule 604D compliance in addition to Krenkel or are they two separate issues? I believe that they go hand in hand with each other. So if this court wants to decide both, we would think that's proper as well. Okay. All right. Justice Walsh, any questions? No questions. Justice Vaughn? No questions. All right. Mr. Rodriguez for the state. Yes. Thank you, Your Honor. Good morning and may it please the court. In this case, defendant's guilty plea was entered into knowingly and voluntarily notwithstanding the defendant's contention that his plea was obtained in violation of his right to appeal. The defendant's argument fails for several reasons. One, defendant's court closed from raising this claim of error as a result of voluntarily entering into his guilty plea, which waives all non-jurisdictional issues, including constitutional ones. Two, defendant's argument substantively lacks merit where A, his request to proceed and B, defendant's, the questioning of the trial court during the second motion where defendant was seeking to have counsel discharged, demonstrated his lack of awareness of the consequences of giving up the right to counsel. And three, the alternative argument regarding his plea being involuntary lacks merit and isn't proper. Mr. Rodriguez, how do you say the defendant was manipulating the system when Mr. Bateman, his attorney, moved to withdraw? Sure, Your Honor. So, the sort of procedural possible withdrawal was first that defendants thought on July 12th of 2018, the PD's office was appointed to represent him. September 13th of 2018, the motion to withdraw was filed by Mr. Bateman. On October 1st of 2018, the defendant informed the court that he wanted to proceed pro se. He was admonished according to ward and according to 401. And he just generally responds to the court, yes, I understand the admonishments and so on. He was admonished about his educational background and some of the minimums that are the maximums that he was suffering, potentially facing, excuse me. So, the court at R15 and 17 of the record finds that he's allowed to withdraw and defendant represents himself at this point pro se. One month later on November 13th, defendant requests reappointment. We know that because in the common law record at C49, there's an indication that the PD's office was reappointed. This was during the time in which defendant was representing himself pro se. There's also testimony by Mr. And then subsequently on December 4th of 2018, there's a second motion to withdraw that was filed by Mr. Bateman following his reappointment. And then at the December 10th, 2018 hearing is where defendant makes the equivocal statements in his responses indicating wanting to proceed pro se. So, there was no substantive or I would say the argument regarding the manipulation is indicated and there was no substantive change in what occurred between November, between October and December. Defendant asked counsel to withdraw and on the next court date, he's asking counsel to come back. So, that indicates that defendant's flip-flopping in his regard. The case law indicates when you see that flip-flopping, the court can take that into consideration. And then furthermore, on December 10th, 2018, defendant's equivocal responses demonstrate that his request to proceed pro se was not legitimate. It was intended to gain the system. He was not accepting the full consequences of what it meant to proceed pro se as the court asked him if he was prepared to suffer at least a minimum of six years in IDOC if he represented himself and he lost his trial and he indicated no. So, there's an understanding that when you proceed pro se and you make that request, it needs to be clear and unequivocal. In defendant's situation here, it most certainly was not unequivocal. Defendant was not clear on the consequences. He flip-flopped back and forth and then subsequently, during the plea hearing, he made requests or referenced the fact that Mr. Bateman was on his case and he didn't want him, not because the defendant had any earnest intent or earnest desire to engage in self-representation, but because he didn't want Mr. Bateman to represent him. So really, the court could also look at that and see that defendant's subsequent conduct didn't evince an intent to want to proceed pro se legitimately. It was merely that he didn't like counsel and therefore wanted to make these flip-flopping requests to manipulate the system in hopes of getting a different public defender. And that's not a legitimate basis for requesting to proceed pro se. The record shows that he was told that on multiple occasions, if he was going to be appointed to the public defender's office pursuant to their policy, he would have attorney Bateman represent him. Defendant doesn't have that right to dictate who he wanted to have as his appointed attorney. If defendant had an issue with Mr. Bateman, he absolutely could have elected to hire private counsel, but chose not to. So I think the court in its totality can look at that information as indicating that defendant's request was not sincere. It was equivocal and he sought to manipulate the system to ultimately see if he would be able to have a better deal. That's what the trial court subsequently found in the motion to withdraw hearing. But Mr. Rodriguez, isn't it and he didn't have a good result. And so he was trying to tell the trial court, look, I've had this guy before and he doesn't do a good job for me. I mean, shouldn't that have prompted a crankle inquiry by the court? So I would respond to that in a couple of ways. First of all, I don't believe that the record supports the assertion that Mr. Bateman had represented defendant ineffectively or in some and actually quite the contrary. During the motion to withdraw hearing, there was testimony from a defendant and Mr. Bateman. A defendant testified on cross-examination that Mr. Bateman had represented him on numerous prior occasions and had actually achieved a substantial result for him in positive outcomes on cases where he was facing multiple charges. So there was actually an indication by defendant's own admission that he had previously been represented by Mr. Bateman and found his representation to be positive and reap benefits from it. In regards to the crankle issue, defendant's allegation regarding crankle was that counsel colluded with former ASA Davis in getting him to plead guilty, that Mr. Bateman coerced him by threatening the judge was going to sentence him to the maximum. There was also allegations of mental health issues weren't addressed. So based on the allegations that defendant made in his pro se motion of February 25th, the court looked at that information, reviewed it, and determined that based on defendant's representations, this raised the issue of possible neglect. And therefore, as the court was allowed to do under, you know, the three sort of processes it may engage in when engaging in the preliminary crankle inquiry, reviewed the sufficiency of defendant's allegations of effectiveness based on his motion, and then made the determination that based on what defendant alleged, Mr. Bateman was allowed to withdraw and special public defender Griffin was appointed to represent defendant's crankle counsel. So contrary to counsel's arguments, a proper preliminary crankle inquiry did occur in this case. The court reviewed defendant's pro se motion and given the fact that counsel, excuse me, that a defendant was alleging Mr. Bateman's ineffectiveness, it would have been inappropriate for Mr. Bateman to argue that at all. So case all is clear on that point that that's sort of an avenue that allows a defendant to file a motion when normally counsel would be correct that defendants aren't allowed to engage in pro se litigation on their own if they're represented. This is, you know, one of the exceptions to that rule. But this was after the plea, right? That counsel was appointed? Yes. Right. Okay, go ahead. Thank you. You know, furthermore, regarding the crankle issue, the record demonstrates that special public defender Griffin understood his role as crankle counsel. Defendant argues that merely allowing counsel to withdraw and appointing new counsel doesn't satisfy the requirements of crankle. And while that's generally correct, that argument lacks context. When the defendant raises an ineffectiveness allegation in pro se motion, and the trial court allows counsel to withdraw and appoints new counsel, but new counsel doesn't argue or reference that initial allegation of ineffectiveness at the subsequent adversarial error, then it's clear that counsel isn't acting pursuant to the requirements of crankle. And that's what the court said in Reed. And that's what this court said in Johnson. Further appointment of new counsel doesn't result in any subsequent litigation on the issue, then such appointment doesn't satisfy the requirements of crankle. And that's what the appellate court said in People v. Roberson. Here, Mr. Griffin clearly understood his role and engaged in further litigation. As the defendants and effectiveness claims, the fact that ultimately, some of those claims that were raised in defendants pro se motion weren't addressed, were a consequence of defendant not proceeding with them further not testifying about them on direct. And also the fact that counsel was honing in the substantive allegations that had the most merit had the most basis in the factual record, that would have been the of public defense abatement, collusion between public defense abatement and former ASA Davis, and also defendants allegations that his mental health issues were improperly considered. How would you ever elicit testimony on that if it's not in the pleading? Regarding what I'm sorry, Your Honor, you said that he didn't ask questions about the pro se allegations that had been raised during the questioning and there was no amended. The amended pro se motion, I'm sorry, the amended motion by post plea counsel did not include all of the pro se allegations, correct? Correct. So I think this point is critical. And so I just want to be clear on this with the court. On February 12th of 19, defendant filed a letter asking to withdraw his motion, his plea. And that's located at C75 of the common law record. At 80 to 86 of the common law record is the motion to withdraw plea that defendant filed and included a handwritten affidavit that was filed on February 25th of 2019. That motion alleged all the grounds that defendant addressed coercion between the public defender and the court, inadequate representation, collusion between his public defender and the ASA, a lack of consideration of his mental health issues, that there was no factual basis supporting the plea. Then subsequently at C91 to 96 of the record was a motion defendant filed that was entitled late motion to withdraw plea. And that was filed on August 24th of 2020. That motion only alleged prosecutorial misconduct between public defender and the ASA, that defendant was forced by his public defender in the ASA to plead guilty. And that it's generally that his plea was the result of coercion. So in that subsequent motion, defendant had withdrawn all allegations regarding his pleading involuntary because it was the product of coercion and he wasn't allowed to represent himself pro se. And then subsequently when defendant had the opportunity to testify at the adversarial hearing in March of 2022, defendant doesn't advance any statement or reference to his pleading involuntary because he wasn't allowed to proceed pro se. He squarely testifies that the issues were collusion between his attorney and the ASA, that he felt his mental health issues weren't adequately addressed and also that counsel failed to communicate with him in a way that he thought was adequate. So it's clear from the record that at the opportunities when defendant was able to address these claims, he affirmatively abandoned them. And so the fact that public defender, especially public defender Griffin, ultimately honed down those arguments further isn't an indication of his ineffectiveness for not following critical counsel. It's merely- Mr. Rodriguez, that is my question. Isn't that what this defendant is claiming is that his post-plea counsel was ineffective because he didn't raise the issues that were raised in the pro se complaint? You say that he effectively abandoned them. How do you know that? Well, because- Because he didn't testify to them? No, Your Honor. And also because when defendant initially raised the allegation about being pro se in his first motion, he files a subsequent motion later on in 2020. And it absolutely makes no reference to his plea being coerced as a result of him not being able to proceed pro se. And then later on, he further abandons that as demonstrated in the record when he fails to make any mention of it during the hearing. The hearing- So, there wasn't a motion filed by post-plea counsel. Post-plea counsel proceeded on defendant's February 25th, 2019 motion in which he argued all of the bases of his plea being involuntary. So, there was no- Post-plea counsel never filed an amended motion? No, Your Honor. Even though he asked for more time to do so? Correct, Your Honor. He did proceed. He did ask and spoke with the defendant in court. And following that, he asked for more time. He ultimately did not choose to proceed on that. He proceeded on the defendant's pro se motion, which included the full sort of breadth of all of these allegations the defendant was making. But in the hearing- Well, you didn't say that. You said he effectively abandoned them. Right, Your Honor. So, during that motion- You can't have it both ways. He can't proceed on the full breadth of it and effectively abandon certain claims. Well, Your Honor, I think the issue with that is when none of those claims have any basis, counsel has no legal requirement to advance meritorious arguments. And so- I understand that. That wasn't my question. My question is, you claim that the defendant abandoned certain claims. Yes, Your Honor. You're doing that only based upon the pleadings. And you have a post-plea counsel who didn't file an amended motion. Correct, Your Honor. So, I think when you look at the record, even subjecting- In order to comply with Rule 604, don't you think that the amended motion should be filed? Not if counsel doesn't see that there needs to be one, Your Honor. And as I indicate, case law indicates that whether or not a motion, an amended motion is filed, 605P still requires counsel to file that certificate indicating that he spoke with the defendant, that he assessed the potential claims of error and is going to address those. And at the subsequent hearing, he addressed those that had a basis in the record, that had factual merit. He distilled down defendant's arguments to those that the testimony of the witnesses could support or could contradict. So, in regards to the argument about representing himself pro se, he effectively abandoned that both during the initial motion to plead hearing. You also see it in the pleadings that were filed and ultimately during a direct examination. Defendant doesn't make any reference to that at all. He focuses his testimony- Okay. Okay. I understand. I appreciate that. Justice Welch, any questions? No questions. Justice Vaughn? Yes, briefly. Are you familiar with the Fifth District case from 1992, People v. Algae, A-L-G-E-E, with regard to a judge making comments about what sentence is going to be if the defendant pleads guilty? I am not aware of that. All right. I'd be happy to address it if Your Honor wanted me to. Well, my question was, if you think that's still good law, there are some subsequent cases that back off of that a little bit. But the Fifth District Algae case seems to say, when a judge makes suggestions of a larger sentence, that that can serve as coercion against the defendant, forcing him into a plea. Do you believe there's case law afterwards that takes us out of that realm? Your Honor, I cited the Dammons case, which spoken, I think, on a very similar issue there. The trial court indicated that after a trial in which the defendant was found guilty of some offenses but not first-degree murder, that if a court, if it had been a bench trial, the court most certainly would have found the defendant guilty of that. The court, the appellate court in that case, said that that statement was not an indication of prejudice by the defendant. I think when you're looking at those kind of statements, they have to have a real concern and impact on it. And on the defendant's situation, the fact that there was this sort of general representation that Judge Cognarelli may have been particularly onerous on defendants of domestic violence, first of all, I don't think the support about the record, but second of all, he'd have to show that that specific feeling somehow impacted his decision. There's just no real foundation in the record for the defendant to point to that and highlight that. So I don't think it speaks to an issue of prejudice. I don't think specifically in this case, it's something the defendant could hang his hat on. Thank you. Judge Cognarelli did indicate that he was going to give toward the maximum, didn't he? He did say that, Your Honor. I think it's based on the defendant's criminal history. Well, regardless of what it's based on, he did make that statement. He did, Your Honor. And then the defendant, when he pled guilty, said, I don't have a choice, didn't he? I have no choice, right? He did say that, but that's incorrect, because he absolutely had a choice, Your Honor. He could have proceeded with a trial in which the state was held to its burden to find him guilty beyond a reasonable doubt. So the defendant forwent that choice and all of the attendant rights that went with it by pleading guilty. But if he pled guilty, he was probably going to get the maximum. I mean, if he went to trial, he would probably get the maximum. Well, that's not a foregone conclusion, Your Honor. I think the court made that statement, but ultimately, as we all know, sentencing determinations are made on an individual basis based on the record, the defendant's criminal history, and the pertinent facts. You're right, theoretically. Okay, Mr. Rodriguez, thank you for your arguments. Ms. O'Connor, rebuttal? Yes, Your Honor, thank you. So first, to address Justice Vaughn's question about the court's statements, I believe it occurred about a month before the plea. It's clear from the record that the judge was not involved in any plea negotiations. So it was improper for the judge to say that I'm going to give you closer to max based on the evidence we're likely to hear at trial and your criminal history. That does show a possible bias here. And after the judge said that, Mr. Peoples basically said, okay, well, let's just do a plea deal then because he felt like he had no choice. And the state references the Domenitz case, apologize if I'm butchering that name, but that is a completely different situation. That was after a trial took place, the judge heard all of the evidence and then said, I would have found you guilty after hearing that evidence. The judge's comments here are before any type of sentencing hearing. So here, Mr. Peoples heard from the judge that he was most likely going to receive the maximum sentence. And then he wanted to represent himself. And the judge did not allow him to based on the seriousness of the offenses, which is not a proper reason to deny. Now, the state talks about how the court asked Mr. Peoples that if he was found guilty, was he ready to face six years in jail or prison? That is not the same thing as not understanding and appreciating representing yourself and making that knowing and intelligent and voluntary waiver of counsel. It's quite frankly, it's hard to imagine anybody saying that they would be ready to go to In terms of the voluntariness issue, the state keeps coming back and saying, well, Mr. Peoples voluntary plea means that he waives this issue when that ignores that the issue we're raising is whether or not Mr. Peoples plea was actually voluntary or not. And this is based on the issue of didn't being denied the right to represent himself and the judge's comments here. So we'd argue that this is not a voluntary plea in terms of, you know, the issue of whether or not Mr. Peoples was just trying to delay the proceedings. There is no evidence of that. The comments that the state is talking about from the trial court after the motion to withdraw hearing, that was a different judge. It was Judge Toccarelli who dealt with the issue of whether or not Mr. Peoples could represent himself. And Mr. The judge was very clear, it was based on the seriousness of the offense, and that he would not allow the public defender to withdraw because it was a class X But was there actually a 604D certificate filed in this case? Yes, your honor, there was a 604D certificate filed. However, the argument is that a post plea counsel did not comply with that for the main reason of also that he did not file an amended motion. And while under 604D, there is no duty to file an amended motion, it would have made sense in this case. The state talked about how Mr. Peoples was the one who actually filed a motion to withdraw first, that's actually not correct. Do you believe there was a separate crankle inquiry or crankle hearing and a separate motion to withdraw hearing or did the court merge those together and do them all in one proceeding? It appears that the court actually merged them all together because Mr. Peoples, the court allowed plea counsel to withdraw because of Mr. Peoples' allegations. Do you think that's a problem that they were merged together then? Is that central to your argument? Yes, your honor, because the whole point of effective assistance of counsel and how the Kyle's court explained the best way to go about this would be to have crankle counsel just deal with those claims so we could flush that out. And then if counsel says, okay, well, there's no meritorious issues here, they're allowed to withdraw. Previous counsel gets reappointed and they deal with the pending motions. So here we have a situation where Mr. Peoples actually wrote a letter to the clerk saying that he wanted to file his plea counsel filed the motion to withdraw guilty plea. And then all of the motions that the state is talking about, Mr. Peoples filed was all after that. So at that point, plea counsel's motion was the proper pending motion. And the only reason that Mr. Peoples other pro se motions that were filed after that should have been considered is for crankle. So in this case, post plea counsel did have a duty to amend and just state which claims he was going off of. It is not clear from the record that post plea counsel thought these claims did not have merit. And so that is why the procedure that happened here should not happen. And then we'd ask this court to adopt what the Kyle's court did. But again, this court has also adopted read in both I believe it was Johnson and phrase. And then does the court have any other questions? Justice Welsh? No questions. Justice Vaughn? No other questions. Thank you. What is your request for relief, Mr. O'Connor? Well, first, we request that this court does just find that Mr. Peoples plea was involuntary. However, I know that Justice Gates, we talked a little bit about the relief and how that might be dealt with with crankle and further proceedings. So if this court believes that that is the proper way to go, we would ask that there'd be a proper new initial inquiry done and then also new proceedings under 604 D as well. Okay. Thank you both for your arguments here today. We appreciate it. This matter will be taken under advisement. We'll issue an order in due course.